# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1698V

Filed: March 24, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| JODI CLESEN, | * | Not For Publication |
| | * | |
| Petitioner, | * | |
| v. | * | Motion for Attorneys' Fees and Costs; |
| | * | Reasonable Basis; Statute of Limitations |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Daryl Laatsch, Esq.*, Daryl W. Laatsch, S.C., West Bend, WI, for petitioner.
*Debra Begley, Esq.*, U.S. Dept. of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On November 1, 2018, Jodi Clesen ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"). Petitioner alleged that she developed Parsonage Turner Syndrome (also known as brachial neuritis ("BN")) after receiving an influenza ("flu") vaccine on October 5, 2015. *See* Petition at 1, ECF No. 1. A Dismissal Decision for insufficient proof was issued on June 15, 2020. ECF No. 29.

On January 12, 2021, petitioner filed a Motion for Attorneys' Fees and Costs pursuant to Section 15(e) of the Vaccine Act, as well as a "Supplemental Brief" in support of her Motion. ECF No. 32 ("Motion for Fees"); ECF No. 33 ("Supplemental Brief"). On January 26, 2021, respondent filed a response opposing the Motion for Fees and Costs, raising the statute of limitations and reasonable basis in the filing of the petition. ECF No. 34 ("Response"). Petitioner filed a reply on February 2, 2021. ECF No. 35 ("Reply").

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986).  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

Petitioner seeks attorneys' fees and costs in the total amount of **$21,707.73**, representing **$21,212.50** in attorneys' fees and **$495.23** in costs. *See* Motion for Fees. After careful consideration, petitioner's Motion for Attorneys' Fees and Costs is **granted in part** for the reasons set forth below.

## I. Background

### A. Summary of Relevant Medical Records

Petitioner received a flu vaccination in her right deltoid on October 5, 2015. Pet. Ex. 1 at 1. At that time, she had a long history of cervical pain, for which she sought ongoing care. *See generally* Pet. Ex. 7.

Seven days later, on October 12, 2015, petitioner presented to Lutz Chiropractic; she reported that the day before she woke up unable to turn her head to the left side without pain. Pet. Ex. 7 at 23; Pet. Ex. 4 at 4. She was diagnosed with neck strain. *Id.*

Petitioner returned to the chiropractor on November 3, 2015, complaining of constant severe pain on the right side of her neck and her upper back which began that morning. Pet. Ex. 4 at 7-8. Later that day, she presented to her primary care practice, Aurora Health Care ("Aurora"), for a neck spasm that had been ongoing for three weeks which radiated down into her chest and right arm pit area. Pet. Ex. 3 at 1-5. She was prescribed Valium. *Id.*

The following day, November 4, 2015, she presented to St. Joseph's Emergency Care Center with a complaint of right upper back pain and "issues with her neck and upper back" since she went on vacation "a few weeks ago." Pet. Ex. 2 at 10-14; ECF No. 20 at 108. The pain was "located in her right scapular area" and "radiate[d] down into her arm." *Id.* She was prescribed Percocet. *Id.* at 13.

Petitioner returned to Aurora on November 5, 2015 for a follow-up after her ER visit. Pet. Ex. 3 at 15. She reported that over the last two weeks she had noticed a "kink" in her neck, but the pain became "unbearable" in the last three days. *Id.* at 16. An MRI showed disc desiccation at all levels and disc narrowing at C4-C6. *Id.* at 24-25; Pet. Ex. 4 at 9-11. X-rays of the cervical and thoracic spine showed degenerative disc disease at C4-5 and C5-6. Pet. Ex. 4 at 12-13.

On November 10, 2015, petitioner and her husband presented to Aurora. Petitioner reported mid- to upper-back pain that began after working long shifts on November 2 and 3 but her husband reminded her that her back was bothering her when they were on vacation three weeks before. Pet. Ex. 3 at 48-51. She was diagnosed with cervical radiculopathy, trapezius muscle spasm and administered a trigger point injection. *Id.* at 55.

Petitioner presented to Dr. Cronin, an orthopedist, on November 17, 2015 with a two to three-week history of right neck and upper shoulder pain. Pet. Ex. 2 at 21-24. She reported

"significant pain in the right trapezius region with radiation to the right lateral shoulder." *Id*. at 21. Dr. Cronin diagnosed petitioner with cervicalgia and cervical radiculopathy. *Id*. at 23.

Petitioner was hospitalized at Froedtert from November 18 to 23, 2015 for right neck and shoulder pain. Pet. Ex. 2 at 56-57. Her discharge diagnoses included intractable right neck and shoulder pain, suspected Parsonage-Turner Syndrome, sepsis secondary to healthcare associated pneumonia, and elevated blood pressure and altered mental status, which were both attributed to petitioner's acute pain. *Id*. at 57-58.

On November 30, 2015, petitioner presented to Aurora and reported that she had been diagnosed with Parsonage-Turner Syndrome and brachial plexopathy. Pet. Ex. 3 at 172. She reported that her arm began hurting on October 9, 2015 and caused pain that radiated up into the right side of her neck. *Id*. Petitioner's doctor noted that "[i]t is possible [her BN] could've been contributed to by her flu shot that she received on the job on October 5 in the right upper arm." *Id*. Petitioner was provided a letter of medical waiver for future influenza vaccines, stating in relevant part that she "developed a severe neurological complication after the flu shot that she had on 10/5/15 with Parsonage Turner Syndrome. She should be exempted from future flu shot (sic)." *Id*. at 420.

On December 15, 2015, petitioner underwent EMG testing, which showed evidence of cervical radiculopathy at C-6 but not brachial neuritis. Pet. Ex. 2 at 127.

On February 1, 2016, petitioner presented to another neurologist, Dr. Lobeck "for a question of brachial plexitis and left arm pain." Pet. Ex. 3 at 214. Petitioner provided a history of right shoulder pain two weeks after a flu vaccine that later developed into severe pain deep in the axilla. *Id*. She described feeling a "creepy crawly sensation" between her shoulder blades. *Id*. at 215. Dr. Lobeck's impression was idiopathic right brachial plexitis. *Id*.

According to the records filed, petitioner continued to treat for ongoing pain through 2018.

## B. Procedural History

The petition and medical records were filed on November 1, 2018. The matter was assigned to the undersigned the following day. Petition, Petitioner's Exhibits ("Pet. Ex.") 1-6, ECF Nos. 1, 4. Additional medical records were filed on January 5 and 8, 2019. A statement of completion was filed on January 10, 2019. Pet. Ex. 7-8, ECF Nos. 8-10.

On June 16, 2019, petitioner filed an affidavit signed by a representative of her employer, affirming that petitioner had not filed a worker's compensation claim.[3] ECF No. 14. Petitioner

---

[3] This affidavit was not filed as an exhibit.

filed additional medical and insurance records on November 18, 2019.[4] ECF Nos. 19-24. Respondent advised that the record was sufficiently complete on January 21, 2020. ECF No. 25.

Respondent filed his Rule 4(c) Report on February 20, 2020, stating that this case was not appropriate for compensation. ECF No. 26.

A lengthy discussion was had at a status conference held on April 14, 2020. It was noted that petitioner received the subject vaccination on October 5, 2015. The petition was filed on November 1, 2018.

The three-year statute of limitations for claims brought in the Vaccine Program was discussed, specifically that the statute begins to run on the date of the occurrence of the first symptom or manifestation of onset. *See Markovich v. Sec'y of Health & Human Servs.*, 477 F.3d 1353, 1360 (Fed. Cir. 2007) (holding that "'the first symptom or manifestation of onset' for the purposes of § 300aa-16(a)(2), is the first event objectively recognizable as a sign of a vaccine injury…"). In this matter, the statute of limitations began to run upon petitioner's first complaint of shoulder pain following her flu vaccination, not when petitioner realized that it may have been related to her vaccination. ECF No. 27. Petitioner's counsel suggested that petitioner's pain was qualitatively different on November 3, 2015, than it was in October of 2015, which he attributed to her pre-existing chronic pain. *See id*.

Further discussed were the opinions of petitioner's treating physicians who attributed her shoulder pain to cervical radiculopathy rather than brachial neuritis or Parsonage Turner Syndrome, with the exception of Dr. Lobeck who assessed petitioner as having brachial plexitis based on a history provided by petitioner rather than the medical records. Respondent pointed out that EMG testing confirmed cervical radiculopathy with no evidence of brachial neuritis and suggested that cervical radiculopathy often presents with referred shoulder pain and is confused for shoulder pain. ECF No. 27.

Petitioner was given the opportunity to investigate further whether she could distinguish her October 2015 pain from the qualitatively different pain she alleged to have occurred on November 3, 2015 and to advise the court how she would proceed within 60 days. ECF No. 27.

Respondent's counsel offered to further discuss the details of this matter with petitioner's counsel, as this was his first case in the Vaccine Program. ECF No. 27.

On June 12, 2020, petitioner filed a Motion for Dismissal Decision. ECF No. 28. On June 15, 2020, a decision was issued dismissing the petition for insufficient proof. ECF No. 29.

Petitioner filed a Motion for Attorney's Fees and Costs, and a supplemental brief on January 12, 2021. Motion for Fees, Supplemental Brief, ECF Nos. 32-33. Respondent filed a Response on January 26, 2021, raising the statute of limitations and reasonable basis. Response at 1, ECF No. 34. On February 2, 2021, petitioner filed a Reply. ECF No. 35.

---

[4] These records were also not filed as exhibits.

4

This matter is now ripe for decision.

## II.     Discussion

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis.

In the instant case, the undersigned has no basis to believe, and respondent does not argue, that petitioner did not bring her claim in good faith. Therefore, the undersigned finds that the petitioner brought her claim in good faith.

### A.  Reasonable Basis

#### 1.  Legal Standard

In discussing the reasonable basis requirement, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

> (1) received a vaccine listed on the Vaccine Injury Table;
> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis focuses on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018).

Reasonable basis is satisfied when there is more than a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See Cottingham*, 971 F.3d at 1346; *see Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); s*ee Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a "scintilla" looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham v. Sec'y of Health & Human Servs.,* 154 Fed. Cl. 790, 795 (2021) (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). Additionally, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius on Behalf of E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379-80 (Fed. Cir. 2021).

Evaluation of reasonable basis is limited to the objective evidence submitted. *Simmons*, 875 F.3d at 636. Still, a special master is not precluded from considering objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa*. *See Cottingham,* 971 F.3d at 1344. The Federal Circuit reiterated that counsel conduct is subjective evidence not to be considered when evaluating reasonable basis. *Id*. at 1345. Counsel's attempt or desire to obtain additional records before filing is subjective evidence and does not negate the objective sufficiency of evidence presented in support of a claim. *James-Cornelius,* 984 F.3d at 1381. The Federal Circuit has additionally articulated that special masters cannot broadly categorize all petitioner affidavits as subjective evidence or altogether refuse to consider petitioner's sworn statements in evaluating reasonable basis. *Id.* at 1380 (holding that factual testimony, when corroborated by medical records and a package insert, can amount to relevant objective evidence for supporting causation). However, a petitioner's own statements cannot alone support reasonable basis, and special masters may make factual determinations as to the weight of evidence. *See, e.g., Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at \*3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018); *Cottingham*, 971 F.3d at 1347.

While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons,* 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Human Servs.,* No. 18-448V, 2020 WL 7491210, at \*12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010,

1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

Though a special master has broad discretion, a special master must keep in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance, and a special master may not abuse their discretion in denying reasonable basis and fees. *See James-Cornelius,* 984 F.3d at 1381.

### B. The Parties' Arguments

#### 1. Petitioner's Argument

Petitioner argued that the petition was timely filed on November 1, 2018 because petitioner's first symptom or manifestation of BN was on November 3, 2015, when she presented with severe pain in her right neck and upper back. Supplemental Brief at 7, 9; *see also* Pet. Ex. 4 at 7. Thereafter, petitioner's treatment was for her right shoulder. Supplemental Brief at 9. Further, petitioner consistently reported the onset of her pain as November 3, 2015 after working a long shift. *Id*. The treatment she received in October 2015 and for three years prior was for less severe neck pain. *Id*. at 7, 10. Thus, the first manifestation of her BN was on November 3, 2015, which is when the statute of limitations began to run. *Id*. at 10.

Further, petitioner pointed to the medical records that documented a diagnosis of Parsonage Turner Syndrome/BN. Petitioner's counsel also noted that the medical records documented petitioner's vaccination as administered on October 20, 2015 rather than October 5, 2015. *See generally* Pet. Ex. 3. Petitioner acknowledged that her diagnosis and the timeliness of the filing of the petition could impact a finding of reasonable basis. Supplemental Brief at 2-5. However, she received the vaccination at work, so the vaccine record was not contained in her medical record. *Id*. at 6. Her counsel relied on the medical records and petitioner's recollection when drafting the petition in early October 2018. *Id*. at 5-6. The vaccine record was not obtained from petitioner's employer "until a week or so after October 5, 2018. It thus became unavoidable that the petition would be filed more than 36 months after the vaccination occurred." *Id*. at 6. However, the statute of limitations begins to run on the date of the first symptom or manifestation of onset of the injury allegedly caused by the vaccine. *Id*. Petitioner's first manifestation of BN, which triggered the statute of limitations, was on November 3, 2015. *Id*. at 10.

Petitioner argued that it is irrelevant to the Motion for Fees whether she would have prevailed on any issues of timeliness; rather, the standard is whether the claim was brought in good faith and with a reasonable basis. Supplemental Brief at 6. Petitioner analogized her case to the facts in *Cloer*, where the appellate court held that a dismissal for untimeliness did not preclude a finding of entitlement to attorneys' fees and costs. *Id*., citing *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012), *aff'd sub nom. Sebelius*, 569 U.S. 369.

Petitioner explained that following the status conference on April 14, 2020, she considered whether an expert could provide an explanation for her condition. Supplemental Brief at 1. Further, she considered the expense of retaining an expert with the risk that petitioner may be awarded only a nominal amount in comparison to the expert costs or not be entitled to

7

compensation at all. *Id*. at 2. "Part of litigation is knowing when to stop". *Id*. Petitioner argued that the case was filed with a reasonable basis based on the medical records which documented that petitioner suffered from BN caused by the flu vaccine, but she conceded that she lost reasonable basis after circumstances changed. *Id*.

### 2. Respondent's Argument

Respondent opposed petitioner's Motion for Attorneys' Fees and Costs, arguing that the petition was most likely barred by the statute of limitations and petitioner was not able to establish that her case was timely filed at any point during the pendency of the matter; as such, the petition was not filed with a reasonable basis and did not gain one. Thus, her Motion for Fees must be denied. Response at 1.

Respondent argued that the relevant statute of limitations requires that a petition be filed prior to "the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset". Response at 8-9, citing 42 U.S.C. § 300aa-16(a)(2); *see also Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011). "[E]ither a 'symptom' or a 'manifestation of onset' can trigger the running of the statute [of limitations], whichever is first." *Markovich*, 477 F.3d at 1357; *Carson v. Sec'y of Health & Human Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013) (noting that the statute of limitations begins to toll with the "the first symptom or manifestation of an alleged vaccine injury, not the first date when diagnosis would be possible"). It is also well-settled "that the first symptom or manifestation of onset might include subtle symptoms that a petitioner would recognize 'only with the benefit of hindsight, after a doctor makes a definitive diagnosis of injury.'" Response at 9, citing *Carson*, 727 F.3d at 1369 (quoting *Markovich*, 477 F.3d at 1358). Here the petition was filed on November 1, 2018, and petitioner's symptoms began prior to November 1, 2015. Response at 9-10. Therefore, the court must conclude the petition is time-barred. *Id*.

Respondent added that the Federal Circuit has held that there is no discovery rule under the Vaccine Act. The date of the first occurrence or manifestation of onset "does not depend on when a petitioner knew or reasonably should have known" about her condition or when she suspected that the vaccine may have been the cause of her injury. Response at 9, citing *Cloer*, 654 F.3d at 1322, 1337, 1339.

Respondent submitted that the subject vaccine was administered on October 5, 2015. Response at 2. The "vast majority of petitioner's medical records" place onset in October 2015. *Id*. at 9-10; *see* Pet. Ex. 7 at 23; Pet. Ex. 3 at 4, 5, 48, 214-15; ECF No. 20 at 109. Although some records note that severe pain began on November 3, 2015, most of the records documented her symptoms as beginning 2-3 weeks prior to November 3, 2015 and progressively worsening to severe pain that manifested on November 3. Response at 10; Pet. Ex. 3 at 1-4; *see also* Pet. Ex. 2 at 63. Respondent referenced the Court's Order of April 14, 2020 where it was noted that several of petitioner's records placed onset of pain in October 2015. Response at 10; ECF No. 27 at 2. Therefore, if the Court determines that petitioner's symptoms began before November 1, 2015, the Court must find that the claim is untimely filed. Response at 8-10.

According to respondent, reasonable basis requires petitioner to provide at least some objective evidence to support each element of her claim. Response at 10, citing *Cottingham,* 971 F.3d at 1345-46. Evidence that petitioner's claim was not barred by the statute of limitations is a necessary element of her claim. Response at 10.

Respondent argued that even if it were assumed petitioner had BN as a result of her vaccination, that would not overcome the untimely filing of the petition. Response at 11. The Federal Circuit in *Simmons* and *Cottingham* made clear that the conduct of counsel is irrelevant in a reasonable basis analysis. Response at 8, 11-12; *Simmons*, 875 F.3d at 636 (noting that counsel's conduct has "no bearing on whether there is a reasonable factual basis for the claim"); *Cottingham*, 971 F.3d at 1354 (noting that attorney conduct is "subjective evidence" that cannot establish reasonable basis).

Summarily, respondent argued that there is no objective evidence that petitioner's condition began after November 1, 2015. Thus, her petition filed on November 1, 2018 is untimely and her Motion for Fees must be denied. Response at 12.

### 3. Petitioner's Reply

In her Reply, petitioner argued that respondent "incorrectly attempted to shift the burden concerning statute of limitations issues to petitioner, when the burden of proof lies on respondent" since the statute of limitations is an affirmative defense. Reply at 1. Citing federal and Wisconsin law, petitioner stated that respondent is required to show that petitioner suffered symptoms prior to November 1, 2015 in order to invoke the statute of limitations affirmative defense. *Id*. at 2-5. Petitioner argued that fees may still be awarded, even if the petition is determined to have been untimely filed. *Id*. at 6.

### III.   Analysis of Reasonable Basis

Consistent with *Cottingham*, petitioner has filed contemporaneous and facially trustworthy medical records demonstrating: (1) that petitioner received a covered vaccine; (2) that the vaccine was administered in the United States; (3) that petitioner experienced symptoms she alleges are associated with her vaccine; and (4) that these symptoms persisted for at least six months. 971 F.3d at 1345-46. *See* Petition; Pet. Ex. 2 at 57-58, 78, 98, 126; Pet. Ex. 2a at 9, 52-57; Pet. Ex. 3 at 18-19, 23-24, 86, 195-96, 215, 301, 420; Pet. Ex. 4 at 50-55; Pet. Ex. 7 at 23.

The onset of petitioner's right shoulder injury was an issue of fact that existed in this case but was not resolved prior to its dismissal. Petitioner's counsel argued that the statute of limitations began to run on November 3, 2015, when petitioner reported onset of severe pain after a long shift at work that was qualitatively different from her chronic pain being treated in October of 2015. Supplemental Brief at 7, 9; *see also* Pet. Ex. 4 at 7. Regardless, even if the petition was untimely, fees may still be awarded, so long as the petition was filed in good faith and with a reasonable basis. *Sebelius*, 569 U.S. at 369, 382. Respondent argued that the onset of her pain was in October 2015 and progressively worsened; as such, the petition was untimely, and the Motion for Fees must be denied. Response at 10; Pet. Ex. 3 at 1-4; *see also* Pet. Ex. 2 at 63.

9

Respondent's argument that satisfying the 36-month limitation[5] period is a statutory prerequisite for an award of attorney's fees and costs was put to rest years ago by the Supreme Court. *Sebelius*, 569 U.S. 369. The Supreme Court held that a "petition found to be untimely may qualify for an award of attorney's fees if it is filed in good faith and there is a reasonable basis for its claim." *Id.* at 382. Thus, petitioner is correct that she may still recover fees despite the untimeliness of the petition, should it be found that the case met the good faith and reasonable basis requirements. *See Simmons*, 875 F.3d at 636 (stating that "we explained that this 'statute of limitation issue,' i.e. whether a petitioner can receive attorneys' fees despite filing a petition after the statute of limitations has expired, may be encompassed within the reasonable basis inquiry, along with 'the underlying merits of the claim.'"). A defective claim is not *per se* ineligible for an award of attorneys' fees and costs. Rather, its defect becomes part of the reasonable basis inquiry, as with any other unsuccessful petition. *Sebelius*, 569 U.S. at 380 (explaining that "[t]he text of the statute is clear; like any other unsuccessful petition, an untimely petition brought in good faith and with a reasonable basis that is filed with—meaning delivered to and received by—the clerk of the Court of Federal Claims is eligible for an award of attorney's fees."). Thus, existing caselaw seems to suggest that an untimely petition does not automatically preclude an award of fees, but rather that timeliness will be part of the reasonable basis analysis.

Since onset must be determined in order to assess the timeliness of the petition, I find the following facts to be supported by the medical records: Petitioner received a flu vaccination in her right deltoid on October 5, 2015. Pet. Ex. 1 at 1. At that time, she had a long history of cervical pain, for which she sought ongoing care. *See generally* Pet. Ex. 7. On October 12, 2015, she presented to her chiropractor reporting that she awoke the day before unable to turn her head to the left side without pain. Pet. Ex. 7 at 23; Pet. Ex. 4 at 4. She complained only of neck pain at this visit. *Id*. She returned to the chiropractor on November 3, 2015, complaining of constant, severe pain on the right side of her neck and her upper back that began that morning. Pet. Ex. 4 at 7-8. Here, she complained only of neck and back pain; shoulder pain was not mentioned. *Id*. She presented to her primary care provider later that day reporting a neck spasm that was ongoing for three weeks which radiated down into her chest and right arm pit area. Pet. Ex. 3 at 1-5. This was the first mention of pain in her right arm.

---

[5] Petitioner argued that it is respondent's burden to prove that the petition was untimely filed, as under the Federal Rules of Civil Procedure and Wisconsin's respective rules, the statute of limitations is an affirmative defense. Reply at 2-5. This argument by petitioner's counsel is indicative of his unfamiliarity with the program. The Vaccine Rules (found at: https://www.uscfc.uscourts.gov/rules), which govern all proceedings under the Vaccine Act, are silent as to affirmative defenses. The Vaccine Guidelines (found at: http://www.uscfc.uscourts.gov/vaccine-guidelines) instruct that "[p]etitioners should be mindful of the applicable statute of limitations" when filing a petition. Under the Vaccine Act, the burden of proof only shifts to respondent if a petitioner proves their prima facie case; respondent then must prove that there was an alternative cause for the injury, otherwise petitioner is entitled to compensation. § 13(a)(1)(B); *Walther v. Sec'y of Health & Human Servs.,* 485 F.3d 1146, 1152 (Fed. Cir. 2007). Either way, when a petitioner does not prevail on entitlement, the award of fees is left to the discretion of the special master. *Perreira v. Sec'y of Health & Human Servs*., 27 Fed. Cl. 29, 31 (Oct. 30, 1992) (citing § 15(e)(1)(B)). For the purposes of the Motion for Fees, it is immaterial which party bears the burden of proof on the statute of limitations because a petitioner may be eligible for an award of fees even if the petition was untimely filed.

On November 4, 2015, she presented to St. Joseph's Emergency Care Center with a complaint of shoulder pain, specifically in the right scapular area. Pet. Ex 2 at 10. She also described right upper back pain and "issues with her neck and upper back" since she went on vacation "a few weeks ago." *Id*. at 10-14. This is the first complaint of shoulder pain mentioned following the administration of the subject vaccine. When she returned to Aurora the following day, she reported that over the last two weeks she had noticed a "kink" in her neck radiating down the right upper arm and into her elbow, which had become "unbearable" in the last three days. Pet. Ex. 3 at 15-16. An MRI performed showed disc desiccation at all levels and disc narrowing at C4-C6. *Id*. at 24-25; Pet. Ex. 4 at 9-11. X-rays of the cervical and thoracic spine showed degenerative disc disease at C4-5 and C5-6. Pet. Ex. 4 at 12-13.

At a November 10, 2015 visit to Aurora with her husband, she reported mid- to upper-back pain that began after working long shifts on November 2 and 3 but her husband reminded her that her back was bothering her when they were on vacation three weeks before. Pet. Ex. 3 at 48-51. She was diagnosed with cervical radiculopathy and trapezius muscle spasm and received a trigger point injection. *Id*. at 55.

She then presented to an orthopedist on November 17, 2015 reporting a two to three-week history of "significant pain in the right trapezius region with radiation to the right lateral shoulder." Pet. Ex. 2 at 21-24. She was diagnosed with cervicalgia and cervical radiculopathy. *Id*. at 23.

Petitioner was subsequently hospitalized from November 18 to 23, 2015 for right neck and shoulder pain. Pet. Ex. 2 at 56-57. Her discharge diagnoses included intractable right neck and shoulder pain and suspected Parsonage-Turner Syndrome. *Id*. at 56.

She presented to Aurora on November 30, 2015 and reported that she had been diagnosed with Parsonage-Turner Syndrome and brachial plexopathy. Pet. Ex. 3 at 172. Petitioner reported arm pain beginning on October 9, 2015 that caused radiating pain up into the right side of her neck. *Id*. Her PCP provided a letter of medical waiver for future influenza vaccines, stating that "[petitioner] developed a severe neurological complication after the flu shot that she had on 10/5/15 with Parsonage Turner Syndrome. She should be exempted from future flu shot (sic)." *Id*. at 420.

EMG testing on December 15, 2015, showed evidence of cervical radiculopathy at C-6 but not brachial neuritis. Pet. Ex. 2 at 127. Petitioner then presented to Dr. Lobeck and reported that she developed right shoulder pain two weeks after her flu vaccine that later became severe pain deep in the axilla. Pet. Ex. 3 at 214. Dr. Lobeck's impression was idiopathic right brachial plexitis. *Id*. at 215.

Based on an in-depth review of the evidence available, petitioner reported shoulder pain beginning on November 4, 2015. Pet. Ex 2 at 10. Before that visit, her complaints were related to her neck and radiating pain from her neck into her arm. Pet. Ex. 7 at 23; Pet. Ex. 4 at 4. After November 4, 2015, petitioner complained of and sought treatment for both neck and shoulder pain. *See* Pet. Ex. 2 at 21-24; Pet. Ex. 3 at 15-16. It is not uncommon for a petitioner to have pre-existing health problems, injuries, or chronic neck pain with radiating pain in one or both arms. Pre-existing conditions do not preclude a petitioner from suffering an injury following the administration of a

11

vaccine. However, pre-existing conditions may confuse the presentation of pain since many people cannot distinguish their neck pain that may radiate into an arm from their shoulder pain following a vaccination, particularly when the person is in such a great deal of pain and may struggle to articulate the pain they are experiencing. This is readily apparent here, where petitioner's description of neck pain radiating into her arm was conflated and confused with right shoulder pain and resulted in various dates of onset. Although petitioner later stated that she had shoulder pain that began days to two weeks following the subject flu vaccine, those reports were provided at later visits, when the details may not have been quite as fresh in her mind. Further, those reports are not consistent with the contemporaneous medical records that were filed. *See* Pet. Ex. 3 at 172, 214. Because the petition was filed on November 1, 2018, and I have determined that petitioner's reports of "shoulder pain" began after November 1, 2015, I find that the petition was timely filed.

Further, petitioner was treated for chronic neck and back pain before her vaccination. However, it was not until after her vaccination that she had a differential diagnosis of cervical radiculopathy versus brachial neuritis. *See* Petition; Pet. Ex. 2 at 57-58, 78, 98, 126; Pet. Ex. 3 at 18-19, 23-24, 86, 174, 195-96, 215, 420. Petitioner ultimately dismissed her claim before submitting her records for expert review. ECF Nos. 28-29. Thus, it is not known what an expert may have concluded upon review of the medical records.

However, petitioner need not prove causation to satisfy reasonable basis for the filing of her claim. *See* § 300aa-15(e)(1); *see also Chuisano*, 116 Fed. Cl. at 287; *P.S.*, No. 16-834V, 2022 WL 16635456, at *18. Petitioner's burden for reasonable basis is much lower and is satisfied when there is "more than a mere scintilla of evidence" defined as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham,* 154 Fed. Cl. at 795 (quoting *Sedar*, 988 F.3d at 765).

Petitioner's medical records provide some support for the allegation that her brachial neuritis was causally related to her flu vaccine. On numerous occasions, petitioner received a differential diagnosis of cervical radiculopathy versus brachial neuritis. *See* Petition; Pet. Ex. 2 at 57-58, 78, 98, 126; Pet. Ex. 3 at 23-24, 86, 174, 195-96, 215, 420. Thus, objective evidence supported the diagnosis of brachial neuritis, which petitioner listed as the injury in her petition. *See* Petition. Petitioner also received a letter of medical waiver for future influenza vaccines, which stated that "[petitioner] developed a severe neurological complication after the flu shot that she had on 10/5/15 with Parsonage Turner Syndrome. She should be exempted from future flu shot (sic)." Pet. Ex. 3 at 420. The foregoing constitutes more than a scintilla of evidence in support of petitioner's claim that her BN was caused by the flu vaccine she received on October 5, 2015.

Further, the Program has compensated petitioners for brachial neuritis following a flu vaccine in the past. *See Abels v. Sec'y of Health & Human Servs.,* No. 18-558V, 2022 WL 2036101, at *1 (Fed. Cl. Spec. Mstr. May 6, 2022); *Patton v. Sec'y of Health & Human Servs.*, 157 Fed. Cl. 159 (2021); *Ebbs v. Sec'y of Health & Human Servs.,* No. 18-0260V, 2020 WL 1488640, at *1 (Fed. Cl. Spec. Mstr. Feb. 18, 2020). This fact lends weight to the feasibility of petitioner's claim that the flu vaccine she received could cause Parsonage Turner Syndrome.

12

The medical records filed in this matter contain sufficient evidence to support a reasonable inference of causation. Thus, I find that petitioner had a reasonable basis for the filing of her petition and until she sought dismissal of same.

## IV. Reasonable Attorneys' Fees and Costs

### A. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id*. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours, including those by paralegals, that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id*. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

#### 1. Reasonable Hourly Rates

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec.

Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[6]

Mr. Laatsch has over forty years of legal experience since his admission to practice before the Wisconsin Supreme Court and the U.S. District Court for the Eastern District of Wisconsin in 1979. Motion for Fees at 3. However, this case was his first in the Vaccine Program. Thus, a reasonable hourly rate as it pertains to Mr. Laatsch has not yet been determined.

In his fee application, he stated that his hourly rate has been $250 for the last ten years. Motion for Fees at 4. Here, he submitted an hourly rate of $250 for himself for 2018-2020. *Id*. at 6-8. This is well below the forum rate for an attorney with his level of experience.[7] Thus, I find the hourly rate billed and requested by Mr. Laatsch to be reasonable.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

---

[6] The 2015-2023 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.,* No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

[7] *Id*. In so finding, the undersigned is not reaching a determination on whether attorneys in West Bend, Wisconsin are entitled to forum rates because counsel is not seeking forum rates for his work on this case.

Mr. Laatsch stated that there "is no charge for any work on this matter by any support personnel or any other person." Motion for Fees at 4. Thus, all hours spent on this matter were expended by Mr. Laatsch himself.

As noted above, attorneys may bill for non-attorney-level work, but they will be compensated at a paralegal rate. *O'Neill*, No. 08-243V, 2015 WL 2399211, at *9. Additionally, clerical tasks and time spent learning about the Program are not compensated at all. *McCulloch*, 2015 WL 5634323, at *26; *Matthews*, No 14-1111V, 2016 WL 2853910, at *2. Upon review of the hours billed by Mr. Laatsch, a reduction in the hours expended on this matter is warranted.

Mr. Laatsch billed a total of 84.85 hours for this case. This included charges for 5 hours spent on "research re format and procedures – initial filing"; 1 hour spent on "research re formats and preparation of exhibits"; 1 hour spent on "research re procedures for registering as a filing user"; 4 hours "created, organized, and mailed paper copies of petition and exhibits to HHS"; .5 hour spent filing records; and .5 hour spent in part reviewing the Vaccine Rules. Motion for Fees at 6-8. Thus, I will reduce the overall hours spent by 5%, resulting in a **reduction of $1,060.62.**

### 3. Reasonable Costs

Petitioner also requested $449.38 for miscellaneous expenses paid by Mr. Laatsch, such as for copies of medical records and for mailing documents to HHS. Motion for Fees at 11, 13-17. She also requested $45.85 for costs related to obtaining copies of insurance records paid by petitioner herself. *Id*. at 12, 18-19. These costs are reasonable and supported by the receipts filed, and I will compensate them in full.

## V. Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED, in part.** The undersigned finds that it is reasonable to compensate petitioner and her counsel for **total attorneys' fees and costs of $20,647.11,** representing **$20,151.88** in fees and **$495.23** in costs.

Accordingly, the undersigned awards:

> **A lump sum payment of $20,647.11 representing reimbursement for petitioner's attorneys' fees and costs in the form of a check payable jointly to petitioner and her counsel of record, Daryl Laatsch of Daryl W. Laatsch, S.C.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

                                                            **s/ Mindy Michaels Roth**
                                                            Mindy Michael Roth

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

Special Master